**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Adam Richard Aho, *sui juris*

       v.                              Civil No. 23-cv-454-JL-TSM

Deutsche Bank National Trust Company,
as Trustee on Behalf of the Certificateholders
of the HSI Asset Securitization Corporation
Trust 2007-NC1 Trust, Mortgage Pass Through
Certificates, Series 2007-NC1, a Delaware Limited
Liability Company

**REPORT AND RECOMMENDATION ON**
**PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT**
**AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the court on the "Plaintiff's Motion for Default Judgement (sic)

Against Defendant Deutsche Bank National Trust" (Doc. No. 12) by which the plaintiff, Adam

Richard Aho ("Aho"), seeks a default judgment against the defendant, Deutsche Bank National

Trust Company, as Trustee on Behalf of Certificateholders of the HSI Asset Securitization

Corporation Trust 2007-NC1 Trust, Mortgage Pass Through Certificates, Series 2007-NC1 (the

"Trust"), pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.  Aho argues that a default

judgment is warranted because the Trust failed to answer the complaint within the time prescribed

by the Rules of Civil Procedure and because there was no good cause for the court's decision to

allow the Trust's motion to extend the time to respond to the complaint.  Because this court finds

the Trust's response was timely, there was good cause to grant the Trust's motion to extend the

deadline to answer the complaint, and the Trust has been fully engaged in the defense of this

litigation from the start, it recommends that Aho's motion for a default judgment be DENIED.

This matter is also before the court on the "Defendant's Motion to Dismiss the Complaint" (Doc. No. 13) by which the Trust seeks dismissal of the action, pursuant to Fed. R. Civ. P. 12(b)(6), due to Aho's failure to state any plausible claim for relief. Although Aho has not filed an opposition, this court is obligated to consider the defendant's motion on the merits. See Vega-Encarnación v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("If the merits are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim."). After consideration of the motion and the allegations set forth in Aho's complaint, this court concludes that it lacks jurisdiction over Aho's claims to the extent the plaintiff seeks to relitigate issues that were addressed by the state court with respect to the parties' ownership, use, or possession of the real property at issue in this case. This court further concludes that to the extent Aho seeks to hold the Trust liable based on its failure to pay him an alleged debt under the terms of an agricultural lien that Aho filed with the Massachusetts Secretary of the Commonwealth, he failed to allege a plausible claim for relief. Therefore, and for all the reasons described below, this court recommends that the Trust's motion to dismiss be ALLOWED.

## BACKGROUND

This action involves a dispute that arose following the Trust's foreclosure of a mortgage on residential property located in Rindge, New Hampshire (the "Property") and formerly owned by Aho and his spouse. In connection with the foreclosure, the Trust took ownership of the Property. It then filed a possessory action ("Possessory Action")[1] against the Ahos in New

---

[1] A "possessory action" under New Hampshire state law is a special form of action "to recover possession of real estate against a tenant or other person holding it 'without right.'" Flo-Pro Inc. v. 10 Iron Horse Drive, LLC, No. 11-cv-158-JL, 2011 WL 4527416, at *5 (D.N.H. Sept. 28, 2011) (quoting RSA 540.12).

Hampshire state court. On May 25, 2023, the state court issued a judgment in favor of the Trust, which extinguished any right of possession that the Ahos had in the Property, and on July 5, 2023, it issued a Writ of Possession directing law enforcement to remove the Ahos from the Property. However, on October 3, 2023, Aho, proceeding pro se, filed the instant action against the Trust by which he claims that the Trust improperly acquired ownership of the Property without paying a $750,000 debt owed under the terms of a UCC-1 Agricultural Lien (the "UCC Lien") in which Aho named himself as both the debtor and the secured party, and listed the Property as collateral for the debt. By his Complaint, Aho asserts claims against the Trust for trespass to land (Count 1), violation of the New Hampshire Consumer Protection Act, RSA Chapter 358-A (Count 2), a declaratory judgment regarding the parties' rights and obligations with respect to the UCC Lien (Count 3) and fraud (Count 4). Although Aho's legal theories are somewhat ambiguous, it is clear that each of his claims is premised upon the validity of the UCC Lien and Aho's alleged claim that the Trust had an obligation to pay him the amount due under the Lien prior to foreclosing on and taking ownership of the Property.

## DISCUSSION

## I.      PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

This court turns first to Aho's motion for a default judgment against the Trust. The plaintiff argues that a default judgment is warranted because the Trust failed to answer the complaint within the time required under the Federal Rules of Civil Procedure and because there was no good cause justifying an extension of the deadline. The Trust contends that it filed a timely motion to extend the deadline for responding to the complaint, demonstrated good cause for enlarging the time to do so, and filed a motion to dismiss well before the extended deadline expired. This court finds that there has been no default and that the plaintiff's motion should be denied.

A. **Procedural History**

Aho filed his complaint in this action on October 3, 2023. Doc. No. 1 (Complaint). On November 17, 2023, he completed service upon the Trust by serving a summons and copy of the complaint upon the Trust's eviction counsel, an attorney at the law firm of Haughey, Philpot & Laurent. Doc. No. 7 (Return of Service). Under the Federal Rules of Civil Procedure, the Trust had until December 8, 2023, to respond to the complaint. See Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that a defendant who has not waived service must serve an answer "within 21 days after being served with the summons and complaint").

On November 30, 2023, the Trust's litigation counsel from the law firm of Hinshaw & Culbertson LLP filed appearances in this case. Doc. Nos. 8 & 9. Subsequently, on December 8, 2023, the Trust filed a motion seeking to extend the deadline for responding to the complaint to January 8, 2024. Doc. No. 10. In support of its motion, the Trust stated that it was analyzing Aho's claims and preparing a motion to dismiss for failure to state a claim. Doc. No. 10 ¶ 3. It also indicated that it was considering whether to seek dismissal for improper service of process. Id. ¶ 4. Aho did not assent to the Trust's motion, and rather than filing an objection, he filed the instant motion for a default judgment.

On December 26, 2023, after receiving no opposition to the Trust's motion, this court entered an order granting the motion and extending the time for the Trust to respond to the complaint to January 8, 2024. The Trust filed its motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on January 2, 2024, well within the applicable time period. Doc. No. 13. Several days later, the Trust filed an opposition to Aho's motion for a default judgment. Doc. No. 14.

B.  <u>Discussion</u>

"[T]he entry of default judgment in federal court is governed by Federal Rule of Civil Procedure 55." Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 5 (1st Cir. 2007). "Rule 55 outlines a two-step process." Dmitriev v. Mann, No. 1:21-CV-40068-NMG, 2023 WL 2988644, at *6 (D. Mass. Mar. 10, 2023). First, under Rule 55(a), the clerk must enter a default when the moving party has "shown by affidavit or otherwise," that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). "Only after the clerk has entered a default under Rule 55(a), may a default judgment be entered under Rule 55(b)(1) or 55(b)(2)."[2] Dmitriev, 2023 WL 2988644, at *6.

In the instant case, Aho never sought entry of default pursuant to Rule 55(a). Consequently, his motion for default judgment under Rule 55(b) is premature. Even if this court were to construe Aho's motion as seeking both the entry of default and a default judgment under paragraphs (a) and (b), the motion should still be denied. "Default judgments entered pursuant to Fed. R. Civ. P. 55 are intended to protect diligent parties whose adversaries are clearly unresponsive." Niemic v. Maloney, 409 F. Supp. 2d 32, 37 (D. Mass. 2005). This is not a case in which the defendant failed to plead or otherwise defend the action. The record demonstrates that the Trust filed a timely motion to enlarge the deadline for responding to the complaint and filed its motion to dismiss well within the deadline set by the court. There is no basis for a finding of default under Rule 55(a) or a default judgment under Rule 55(b).

---

[2] Rule 55(b)(1) requires the clerk to enter a default judgment "against a defendant who has been defaulted for not appearing" where "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation[.]" Fed. R. Civ. P. 55(b)(1). Rule 55(b)(2) provides that "[i]n all other cases, the [moving] party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[T]he court may enter judgment by default against a party 1) after notice and a hearing if the party has appeared in the action or 2) without notice and a hearing if no appearance has been made." Niemic v. Maloney, 409 F. Supp. 2d 32, 37 (D. Mass. 2005).

Aho's assertion that there was no good cause for granting an enlargement of time for the Trust to respond to the complaint does not alter this court's conclusion. As an initial matter, Aho waived any objection to the Trust's motion for an enlargement of time when he failed to file an opposition. See L.R. 7.1(b) (explaining that "[t]he court shall deem waived any objection" to a motion that is not filed within fourteen days from the date the motion is filed). Furthermore, Fed. R. Civ. P. 6(b) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires[.]" Fed. R. Civ. P 6(b)(1)(A). Here, the Trust filed its motion for an enlargement of time before the expiration of the deadline to answer the complaint. This court finds that it also demonstrated good cause for the extension.

"'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts." Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1259 (9th Cir. 2010) (citing cases from the First, Seventh, and Fourth Circuits). In the First Circuit, the term "is liberally construed." Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 187 (1st Cir. 2004) (discussing "good cause" in the context of Fed. R. Civ. P. 55(c)). Additionally, because there is "no precise formula for the 'good cause' analysis[,]" the question whether good cause exists is left to the court's discretion. Id. In this case, the record indicates that the Trust needed time to retain litigation counsel.[3] It also required time to review the plaintiff's complaint, perform the research and writing needed to prepare its motion to dismiss, and evaluate whether to seek a dismissal on the grounds of improper service of process. These activities are part of the ordinary process

---

[3] Aho challenges the Trust's decision to retain new counsel to handle the instant litigation and maintains that the Trust could have relied on the attorney who represented it in the state court eviction proceedings. See Doc. No. 12 at 3. However, a party's choice of counsel is not an issue for the court or the opposing party. The Trust's conduct in this regard does not alter this court's conclusion that there was good cause for an extension of time for it to respond to the complaint.

required to defend a lawsuit. Therefore, the Trust demonstrated good cause for seeking an enlargement of time to respond to Aho's complaint and Aho's motion must be denied.

## II.    DEFENDANT'S MOTION TO DISMISS

This court turns next to the Trust's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support of its motion, the Trust argues that Aho failed to state a claim for relief because the UCC Lien is not valid and Aho has no rights in the Property. Doc. No. 13-1 at 2, 7-11. It also argues that some of the relief Aho seeks is barred by the Anti-Injunction Act and the *Rooker-Feldman* doctrine, and that all four Counts of the complaint fail as a matter of law. Id. at 2-3, 11-20. This court finds that the *Rooker-Feldman* doctrine precludes this court from exercising subject matter jurisdiction over Aho's claims to the extent they seek to relitigate issues addressed in state court regarding the parties' respective rights to own, use, or possess the Property. To the extent Aho otherwise seeks to establish liability based on the Trust's alleged failure to pay him under the UCC Lien, this court finds that his claims must be dismissed under Rule 12(b)(6) for failure to state a plausible claim for relief.

### A.    Factual Background

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[t]he court must 'assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability.'" Redondo-Borges v. U.S. Dep't of Housing & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003)). Where, as here, the plaintiff proceeds pro se, the court must construe the plaintiff's allegations liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (explaining that documents filed pro se must "be liberally construed" (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The facts may be derived not only from the complaint, but also from "whatever

documents are either annexed to it or fairly incorporated into it, and any relevant matters that are susceptible to judicial notice." Redondo-Borges, 421 F.3d at 5. However, the court will "not credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'" Id. (quoting Aulson v. Blandchard, 83 F.3d 1, 3 (1st Cir. 1996)). Moreover, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014) (alteration in original) (quotations and citations omitted). Applying this standard to the instant case, the relevant facts are as follows.[4]

### i.    The Mortgage and Foreclosure of the Property

On July 18, 2002, Aho and his wife obtained title to the Property by way of a Warranty Deed. Seeley Decl., Ex. 1. The Deed was recorded in the Cheshire County Registry of Deeds on July 19, 2002. Id. On or about January 19, 2007, the Ahos granted a mortgage on the property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for New Century Mortgage Corporation and its successors and assigns, to secure payment of a $195,000 promissory note. Seeley Decl., Ex. 2 at 1-2. The mortgage was recorded in the Cheshire County Registry of Deeds on January 30, 2007. Id. Several years later, on March 4, 2010, Aho transferred all of his rights and interest in the Property to Credit Techs of Cape Girardeau, Missouri ("Credit Techs") by way of a Quitclaim Deed. Seeley Decl., Ex. 6. The Quitclaim Deed was recorded in the Cheshire County Registry of Deeds on March 26, 2010. Id.

On June 15, 2011, MERS assigned the Ahos' mortgage to BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing, LP ("BAC Home Loans"). Seeley Decl. Ex. 3. Several

---

[4] The facts are derived from Aho's Complaint ("Compl.") (Doc. No. 1), the exhibits attached thereto ("Compl. Ex. __"), and the documents attached as exhibits to the Declaration of Donald W. Seeley Jr. ("Seeley Decl.") (Doc. No. 13-2).

years later, on November 6, 2014, Bank of America National Association, the successor by merger to BAC Home Loans, assigned the Ahos' mortgage to the Trust. Seeley Decl. Ex. 4. The record before the court shows that the Trust was the last mortgagee of record with respect to the Ahos' mortgage.

The Ahos failed to pay the amounts due under the mortgage. See Seeley Decl., Ex. 7 at 4. On September 2, 2022, the Trust notified Aho, his wife, and Credit Techs that a foreclosure sale of the Property was scheduled for October 21, 2022. Id. at 4-5, 7. It also published notice of the sale in *The Union Leader* on September 30, 2022, October 7, 2022 and October 14, 2022. Id. at 4. On October 20, 2022, one day prior to the date of the foreclosure sale, Aho filed the UCC Lien with the Massachusetts Secretary of the Commonwealth. See Compl. Ex. 3.[5] Therein, Aho listed himself as both the debtor and the secured party. Id. In the description of the collateral, Aho stated, "THIS IS ACTUAL AND CONSTRUCTIVE NOTICE IN THE COMMERCIAL CHAMBER. ALL PROPERTY BELONGING TO THE DEBTOR/BAILEES BELONG TO SECURED PARTY." Id. He then described the Property and listed its value as $750,000. Id. Aho does not allege that he filed the UCC Lien with the New Hampshire Secretary of State even though Aho and the Property are located in New Hampshire.

The foreclosure sale took place as scheduled on October 21, 2022. Seeley Decl., Ex. 7 at 5. A Foreclosure Deed granting ownership of the Property to the Trust was recorded in the Cheshire County Registry of Deeds on March 8, 2023, and on or about March 17, 2023, Aho received notice that the Trust had purchased the Property. Id. at 2-3; Compl. ¶ 4. Aho alleges that the Trust failed to pay the $750,000 due under the UCC Lien prior to or after purchasing the

---

[5] The exhibit numbers of the exhibits attached to Aho's complaint are based on the list of exhibits set forth in Aho's Addendum Table of Contents, which is also attached to the complaint.

Property. <u>See</u> Compl. ¶ 5 & Ex. 5. He also alleges that under Article 9 of the Uniform Commercial Code ("UCC"), he retains the right "to use or operate the [Property] for the purpose of preserving the collateral or its value[.]" Compl. ¶ 17.

### ii.    The Possessory Action

The Ahos remained on the Property following the foreclosure. <u>See</u> Compl. ¶ 24 & Ex. 7. On or about March 15, 2023, the Trust issued an Eviction Notice to the Ahos informing them of its intent to evict them from the Property by April 24, 2023, so it could prepare the Property for sale. Compl. Ex. 7. However, the Ahos failed to vacate the Property. <u>See</u> Compl. Ex. 8. Aho maintains that he had a right to remain there based on his alleged status as the secured party under the UCC Lien. <u>See</u> Compl. ¶¶ 13-14.

On May 3, 2023, the Trust filed a Possessory Action against the Ahos in the New Hampshire Circuit Court. Seeley Decl., Ex. 8. On May 25, 2023, following a hearing on the merits, the Circuit Court entered judgment in favor of the Trust. <u>Id.</u> at Index #14. Aho appealed the judgment to the New Hampshire Supreme Court. <u>Id.</u> at Index #15. The Supreme Court dismissed the appeal on or about September 18, 2023. Compl. ¶ 19; <u>see also</u> Seeley Decl., Ex. 8 at Index #21.

On July 5, 2023, the Circuit Court issued a Writ of Possession stating that the Trust had recovered judgment against the Ahos for possession of the Property and directing the Sheriff, his Deputy, or other Law Enforcement Officer to "cause the [Trust] to have possession of [the Property]" within ninety days. Compl. Ex. 8. Aho then moved to stay of the Writ of Possession. Seeley Decl., Ex. 8 at Index #20. The Circuit Court allowed the motion, thereby staying the Writ of Possession until August 4, 2023. <u>Id.</u>

In a letter dated August 1, 2023, Aho notified the Trust in relevant part as follows:

> You were to have paid the amount of $750,000.00 USD (the "Debt") to me on October 21, 2022 and this Debt remains outstanding despite my requests for payment. You are in default. The Debt relates to: UCC-1 Agricultural Lien on all land and property and or real property known as 590 Main Street, Town of Rindge, State of New Hampshire, county of Cheshire, United States.

Compl., Ex. 5. Aho further demanded that the Trust pay him the full amount of the Lien within 31 days from the date of his letter, and that "[f]ailure to pay the lien and cure the default, may result in the full balance being owed at once (acceleration)." Id. One day later, on August 2, 2023, Aho had the UCC Lien recorded in the Cheshire County Registry of Deeds. See Compl. Ex. 4.

The record indicates that the Cheshire County Sheriff's Office issued a written order directing Aho, his wife, and "all other occupants" to vacate the Property by September 20, 2023 or risk arrest for criminal trespass. Compl. Ex. 7. The order was accompanied by a copy of the July 5, 2023 Writ of Possession. See id. Exs. 7-8. The record also indicates that on September 20, 2023, Aho filed another motion for a stay of the Writ of Possession, which the Circuit Court granted the same day. Seeley Decl., Ex. 8 at Index #22. The stay was scheduled to remain in effect through October 4, 2023. See id.

Aho initiated the instant action against the Trust on October 3, 2023. On October 12, 2023, the New Hampshire Circuit Court issued a new Writ of Possession in favor of the Trust. See id. at Index #25. Nevertheless, Aho continued to fight his eviction from the Property in the state court, first by seeking to stay and then dismiss the Writ of Possession, and then by seeking to stay the eviction order and the state court proceedings. See id. at Index #28, #32 & #39. The record indicates that the Cheshire County Sheriff executed the Writ of Possession by early December 2023. See id. at Index #43. Therefore, it appears that the Trust was able to take possession of the Property. By his claims in this action, Aho seeks, *inter alia*, damages under the UCC Lien; a declaratory judgment regarding his alleged rights to payment and compensation for any losses

under the UCC Lien; an order authorizing Aho to "hold the collateral of the UCC-1 Lien free of any other requirements pursuant to UCC § 9-601(f); UCC § 9-609(b)(2); and other rights;" and  an order to "stay or vacate" the New Hampshire Circuit Court's eviction order and Writ of Possession in favor of the Trust.  Compl. at Requests for Relief.

### B.  Standard of Review

The Trust moves to dismiss Aho's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  While this standard does not impose "a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).

As described above, pro se litigants like Aho are entitled to have their complaints construed liberally.  See Erickson, 551 U.S. at 94.  "However, pro se status does not insulate a party from complying with procedural and substantive law."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  "[E]ven a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"  Adams v. Stephenson, 116 F.3d 464, 1997 WL 351633, at *1 (1st Cir. 1997) (unpublished table decision) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  For the reasons that follow, this court recommends that the District Judge grant the Trust's motion to dismiss.

### C.  Discussion

###### i.  Lack of Jurisdiction Under the *Rooker-Feldman* Doctrine

In connection with its motion to dismiss, the Trust argues that "Aho's requested relief to vacate the Writ of Possession is . . . barred by the *Rooker-Feldman* doctrine." Doc. No. 13-1 at 13. "[T]he *Rooker-Feldman* doctrine implicates the court's subject matter jurisdiction." Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 44 n.1 (1st Cir. 2003). Therefore, it is appropriate to address this issue first.

The *Rooker-Feldman* doctrine "gives the United States Supreme Court exclusive 'jurisdiction over appeals from final state-court judgments[.]'" Klimowicz v. Deutsche Bank Nat'l Trust Co., 264 F. Supp.3d 309, 314-15 (1st Cir. 2017) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-92 (2005)). It precludes federal district courts "from exercising subject matter jurisdiction where the issues presented in the case are 'inextricably intertwined' with questions previously adjudicated by a state court, such that the federal district court would be in the unseemly position of reviewing a state court decision for error." Mills, 344 F.3d at 44 (footnote omitted). A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999) (quoting Pennzoil Co. V. Texaco Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Accordingly, "*Rooker-Feldman* bars jurisdiction whenever 'parties who lost in state court . . . seek[ ] review and rejection of that judgment in federal court.'" Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009) (alterations in original) (quoting Puerto Ricans For P.R. Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008)).

Here, by seeking to assert an ownership interest in the Property, or a right to use or possess the Property, Aho attempts to conduct an end run around the state court judgment in favor of the Trust in the Possessory Action. As described above, the Circuit Court entered that judgment on

May 25, 2023, and the New Hampshire Supreme Court dismissed Aho's appeal from that judgement on or about September 18, 2023. Under *Rooker-Feldman*, this court is precluded from exercising jurisdiction over Aho's effort to challenge that judgment or reclaim any rights to the Property in federal court. Consequently, Aho's claim for Trespass to Land (Count 1), as well as his requests for relief in the form orders allowing him to "hold the collateral of the UCC-1 Lien free of any other requirements" and to stay or vacate the Circuit Court's Writ of Possession, are barred and must be dismissed.[6]

ii. **Effectiveness of the UCC Lien**

All of Aho's remaining claims, including his claims for damages under the UCC Lien and a declaratory judgment regarding the parties' rights and obligations under the UCC Lien, are premised upon the validity and enforceability of the UCC Lien. The Trust argues that all of these claims must be dismissed because the UCC Lien is invalid and otherwise unenforceable. See Doc.

---

[6] Even if the *Rooker-Feldman* doctrine did not apply, Aho's request for an order staying or vacating the eviction order and Writ of Possession would be barred by the Anti-Injunction Act. That Act precludes federal courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. It "thus constitutes an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions." Garcia v. Bauza-Salas, 862 F.2d 905, 907 (1st Cir. 1988) (alteration in original) (quotations and citations omitted). Moreover, "the Act's use of the term 'proceedings' is comprehensive: 'It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process. . . . It applies alike to action by the court and by its ministerial officers; applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective.'" Gloucester Marine Rys. Corp. v. Charles Parisi, Inc., 848 F.2d 12, 15 (1st Cir. 1988) (punctuation in original) (quoting Hill v. Martin, 296 U.S. 393, 403 (1935)). Therefore, "federal courts may not issue an injunction that blocks the 'utilization of the results of a completed state proceeding.'" Garcia, 862 F.2d at 908 (quoting Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 287 (1970)). Here, Aho's request to stay or vacate the order of eviction and Writ of Possession is aimed at preventing the Circuit Court's judgment from taking effect by blocking the results of the state court proceedings. Under the Anti-Injunction Act, the court lacks the power to grant this relief.

No. 13-1 at 7-11.  Specifically, the Trust argues that the Lien is invalid because Aho had no legal interest in the Property at the time he prepared, filed, and recorded the Lien.  Id. at 7-9.  It further contends that to the extent the UCC Lien was valid at the time Aho first filed it with the Massachusetts Secretary of the Commonwealth, any right that Aho arguably had to enforce it was extinguished when the Trust foreclosed on the Property.  Id. at 9-11.   This court finds that dismissal is warranted because Aho failed to allege the existence of a valid UCC Lien.

"Generally defined, an agricultural lien [such as the UCC Lien at issue in this case] is a non-consensual charge or encumbrance upon property created by operation of law when a person supplies goods or services to another engaged in the business of producing farm products." Stockman Bank of Montana v. Mon-Kota, Inc., 342 Mont. 115, 126 (2008) (citing Black's Law Dictionary, 941 (Bryan A. Garner ed., 8th ed., West 2004)).  Under New Hampshire UCC law, an "[a]gricultural lien" is specifically defined as follows:

"Agricultural lien" means an interest, other than a security interest, in farm products:

(A) which secures payment or performance of an obligation for:

(i) goods or services furnished in connection with a debtor's farming operation; or

(ii) rent on real property leased by a debtor in connection with its farming operation;

(B) which is created by statute in favor of a person that:

(i) in the ordinary course of its business furnished goods or services to a debtor in connection with the debtor's farming operation; or

(ii) leased real property to a debtor in connection with the debtor's farming operation; and

(C) whose effectiveness does not depend on the person's possession of the personal property.

RSA 382-A:9-102(a)(5).  The "collateral" used to secure such a lien is defined in the statute as follows:

> "Collateral" means the property subject to a security interest or agricultural lien. The term includes:
>
> (A) proceeds to which a security interest attaches;
>
> (B) accounts, chattel paper, payment intangibles, and promissory notes that have been sold; and
>
> (C) goods that are the subject of a consignment.

RSA 382-A:9-102(a)(12).

In the instant case, Aho's alleged UCC Lien is inconsistent with the statutory definitions. It does not purport to secure an interest in any farm products, goods or services.  Nor does Aho allege any facts to suggest that the Property was used as a farming operation.  Additionally, the real property listed as collateral for the UCC Lien does not meet the definition of "collateral" provided in the New Hampshire UCC.  Accordingly, this court finds that the UCC Lien is not a valid agricultural lien under New Hampshire law.

The UCC Lien suffers from other deficiencies as well.  As an initial matter, there is no indication that the Trust has any obligations with respect to the Lien.  As described above, Aho named himself as both the "debtor" and the "secured party" under the UCC Lien.[7]  However, he has not alleged how this creates an obligation on the part of the Trust, which is not named in the UCC Lien or in any underlying transaction.  Additionally, for the UCC Lien to be enforceable, Aho, as the "debtor," was required to have an interest in the collateral.  See RSA 382-A:9-102(28) (defining "Debtor" to mean, in relevant part, "[a] person having an interest, other than a security

---

[7] It is unclear how the same individual can be both the "debtor" and the "secured party" for purposes of an agricultural lien.

interest or other lien, in the collateral"); see also ACG Credit Co., LLC v. Gill, 152 N.H. 260, 265 (2005) (describing elements necessary to establish an enforceable security agreement, including the requirement that "the debtor has rights in the collateral").  However, the record demonstrates that Aho had no interest in the Property at the time he filed the UCC Lien with the Massachusetts Secretary of the Commonwealth.    In particular, the record shows that in March 2010, Aho transferred all of his rights and interest in the Property to Credit Techs.  See Seeley Decl., Ex. 6. Therefore, he had no interest in the Property at the time he first filed the UCC Lien in October 2022.  This court thus concludes that the Lien is invalid and unenforceable, and that any claims over which this court has subject matter jurisdiction should be dismissed on this basis.[8]

###    iii.    Failure to State a Claim Under Counts 1-4 of the Complaint

The Trust also argues that the complaint must be dismissed because Aho has failed to allege sufficient facts to support the claims set forth in Counts 1-4.  This court agrees that to the extent those claims are not barred from consideration under the *Rooker-Feldman* doctrine, they should be dismissed for failure to state a claim.

### Count 1: Trespass to Land

In Count 1 of his complaint, Aho asserts a claim against the Trust for trespass to the Property.  Thus, Aho alleges, in essence, that as the secured party under the UCC Lien, he has the right to possess and control the Property.  See Compl. ¶¶ 23-24.  He further alleges that the Trust

---

[8] In light of this court's conclusion that the UCC Lien is invalid for the reasons described herein, it is not necessary at this time to address the Trust's argument that the UCC Lien is unenforceable because by the time Aho perfected his lien on the Property, any interest he may have had in the Property had been eliminated by the foreclosure and subsequent ruling in favor of the Trust in the Possessory Action. See Doc. No. 13-1 at 8-9.  It is also unnecessary to address the Trust's argument that "[e]ven assuming Aho perfected the UCC Lien, his claim still fails because the UCC Lien was extinguished by the Trust's foreclosure sale where it was junior to the Mortgage and secured the same collateral as the Mortgage (*i.e.*, the Property)."  Id. at 9.

has improperly used the State Court, which "do[es] not have jurisdiction over him" or his ability to "exercis[e] his freedom of possessing his collateral," to send a Sheriff onto the Property in an effort to force him to vacate the Property or face arrest for criminal trespass.  See id. ¶¶ 23-25.  For the reasons detailed above, this court lacks jurisdiction over this claim because it effectively asks this court to review the state court's judgment in the Possessory Action.  Even if this court were to assume that it has jurisdiction to consider Count 1, dismissal would be warranted under Rule 12(b)(6).

"[A] trespass [is] an intentional invasion of the property of another."  Case v. St. Mary's Bank, 164 N.H. 649, 658 (2013) (alterations in original) (quoting Moulton v. Groveton Papers Co., 112 N.H. 50, 54 (1972)).  In this case, Aho claims that the alleged trespass occurred in or around September 19, 2023.  Compl. ¶ 24.  The record establishes that Aho had no ownership interest at that time because he had transferred all of his rights and interest in the Property to Credit Techs, the Trust had foreclosed on and taken ownership of the Property, Aho's appeal of the Circuit Court's judgment in the Possessory Action had been dismissed and the state court had issued a Writ of Possession in favor of the Trust.  See Seeley Decl., Ex. 6, Ex. 7 at 2-3, 5; Compl. ¶ 4 & Ex. 9.  Consequently, Aho has failed to show that the Trust may be held liable for trespass to the Property.

### Count 2: Violation of the New Hampshire Consumer Protection Act

The plaintiff claims, in Count 2, that the Trust's alleged conduct violated the New Hampshire Consumer Protection Act, RSA Chapter 358-A ("CPA").  The Trust argues this claims should be dismissed because the Trust is exempt from liability under the CPA.  Doc. No. 13-1 at 16-17.  Specifically, the Trust relies on RSA 358-A:3(I), which exempts from the CPA "trade or commerce that is subject to the jurisdiction of the bank commissioner . . . or federal banking or

18

securities regulators who possess the authority to regulate unfair or deceptive trade practices." Id. at 16 (quoting RSA 358-A:3(I)). It further contends that, as a national bank that is subject to the broad authority of federal banking regulators, it falls within the exemption and cannot be held liable under the CPA. Id. at 16-17. This court agrees that Count 2 should be dismissed on this basis.

The Trust is a national bank whose business activities are "subject to regulation by the [Office of the Comptroller of the Currency ("OCC")] as authorized by the National Bank Act[.]" Orellana v. Deutsche Bank Nat'l Trust Co., No. 12-11982-NMG, 2013 WL 5348596, at *8 (D. Mass. Aug. 30, 2013). See also Atkins v. U.S. Bank Nat'l Ass'n, No. 13-CV-257-PB, 2014 WL 24259, at *3 (D.N.H. Jan. 2, 2014) ("Business activities of national banks and their operating subsidiaries are controlled by the National Bank Act ('NBA') and OCC regulations."). The OCC "has the authority to protect consumers from the same kinds of fraudulent, deceptive, and unfair practices that are targeted by the [CPA]." Aubertin v. Fairbanks Cap. Corp., No. Civ. 04-358-PB, 2005 WL 331351, at *2 (D.N.H. Feb. 11, 2005). "[B]ecause [Aho's] claim against [the Trust] is based on conduct that is subject to the jurisdiction of a federal banking regulator, [the Trust] is exempt from suit for a violation of the [CPA]" and Count 2 should be dismissed. Id.

In any event, Aho's allegations are insufficient to state a claim for relief. To state a claim under the CPA, the plaintiff must allege sufficient facts to show that the defendant "used an 'unfair or deceptive act or practice in the conduct of any trade or commerce' within the state of New Hampshire." Gilroy v. Kasper, 654 F. Supp. 2d 44, 50 (D.N.H. 2009) (quoting RSA 358-A:2). However, in his complaint Aho alleged no specific facts in support of his claim under the CPA. Nor did he indicate how any of the Trust's actions were unfair or deceptive within the meaning of the statute. To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[a] pleading that offers

'labels and conclusions'" will not suffice.    Iqbal, 556 U.S. at 678 (citations omitted).    Count 2

should be dismissed for this reason as well.

Count 3: Declaratory Judgment (28 U.S.C. § 2201(a))

In Count 3, Aho seeks a declaratory judgment regarding the parties' respective rights and

obligations with respect to the UCC Lien.    In particular, Aho requests that the court

> enter a declaratory judgement (sic) pursuant to 28 U.S.C. § 2201, that (i) [the Trust]
> had an obligation to compensate Adam Aho for the value recorded within the UCC-
> 1 Lien in accordance with Article 9 of the Uniform Commercial Code; (ii) [the
> Trust] has an obligation to indemnify Adam Aho for any losses Adam Aho has
> sustained or may sustain by reason of [the Trust's] purchase of the property which
> already had the UCC-1 Lien on it; (iii) [the Trust] had an obligation to repay the
> amount of the value of the property recorded as collateral in the UCC-1 Lien; and
> (iv) Adam Aho has incurred costs and damages.

See Compl. ¶¶ 28-29 & Request for Relief ¶ B.    The Trust asserts that Count 3 should be dismissed

because "Aho simply does not have a valid UCC lien against the Property or enforceable claim

against the Trust."    Doc. No. 13-1 at 17.    For the reasons described above, this court agrees that

the UCC Lien in invalid and unenforceable against the Trust.    Therefore, this court recommends

that Count 3 be dismissed for failure to state a plausible claim for relief.

Count 4: Fraud

Aho's fourth and final Count consists of a claim for fraud.    The Trust argues that this claim

must be dismissed because Aho failed to plead the elements necessary to state a fraud claim, the

contractual relationship between the parties precludes Aho from seeking recovery in tort, and

Count 4 is barred by the economic loss doctrine.    Doc. No. 13-1 at 17-20.    Because Aho's

allegations are inadequate to support a claim for fraud, this court finds that Count 4 should be

dismissed and that it is unnecessary to address the Trust's remaining arguments.

To establish fraud under New Hampshire law, "a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Snierson v. Scruton, 145 N.H. 73, 77 (2000). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "Therefore, a claimant must specify what the underlying misrepresentation was, who made it, and when and where it was made." Katz v. Belveron Real Estate Partners, LLC, 28 F.4th 300, 308 (1st Cir. 2022) (internal quotations and citations omitted). The purpose of this heightened pleading requirement "is 'to place the defendants on notice and enable them to prepare meaningful responses, to preclude the use of a groundless fraud claim as pretext for discovering a wrong, and to safeguard defendants from frivolous charges [that] might damage their reputation.'" Id. (quoting Dumont v Reily Foods Co., 934 F.3d 35, 39 (1st Cir. 2019)).

Aho's complaint falls short of meeting the requisite pleading standard. Count 4 contains no specific facts supporting Aho's claim for fraud. While the plaintiff states, as part of his general factual allegations, that the Trust "knew or should have known that their misrepresentation to the State Court and/or Cheshire County Sheriff's Office was an intentional interference with Adam Aho's rights, and caused criminal trespass by the Sheriff Deputy pursuant to N.H. RSA 635:2 upon Adam Aho's collateral, as the Secured Party," the complaint is devoid of allegations describing the substance of any misrepresentations, when and where any such misrepresentations were made, or the identity of the person or entity who made the misrepresentations. See Compl. ¶¶ 24-25. Thus, it fails to comply with the heightened pleading requirements of Rule 9(b).

In connection with his fraud claim, Aho appears to rely on "the proofs" contained in Exhibit 2 attached to his complaint. See id. ¶ 31 & Ex. 2. In that document, which is dated May 24, 2023

and signed by the plaintiff, Aho challenges "securitization" as illegal, unlawful and fraudulent. <u>See</u> Compl. Ex. 2. However, Aho does not identify any specific statements or misrepresentations that were made by the Trust or its representatives. Accordingly, he failed to state a claim against the Trust for fraud and Count 4 should be dismissed.

### D.  <u>Conclusion</u>

For the foregoing reasons, this court recommends that the "Plaintiff's Motion for Default Judgement (sic) Against Defendant Deutsche Bank National Trust" (Doc. No. 12) be DENIED and that the "Defendant's Motion to Dismiss the Complaint" (Doc. No. 13) be GRANTED.

Any objections to this Report and Recommendation must be filed within twenty-one (21) days of receipt of this notice. The twenty-one day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. <u>See</u> Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988)).

**SO ORDERED.**

_____
Talesha L. Saint-Marc
United States Magistrate Judge

April 30, 2024

cc:    Adam Richard Aho, pro se
       Hale Yazicioglu Lake, Esq.
       Donald W. Seeley, Jr., Esq.